## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **ANDREA CARLSON**  *Plaintiff,*  v.  **CENTENE and CENTENE MANAGEMENT COMPANY, LLC**  *Defendant.* | Civil Action No.: 4:23-cv-00931  **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Andrea Carlson files this action for damages against Defendant Centene for discriminating against her on the basis of her religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the Missouri Human Rights Act, Mo. Code Regs. tit. 8 § 60-3.050 ("MHRA"), and in further support thereof, alleges as follows:

## PRELIMINARY STATEMENT

"Violate your sincerely held religious beliefs or you lose your job, even if you are working from home." There is perhaps no greater textbook example of the conduct Title VII and the Missouri Human Rights Act expressly prohibit—but unfortunately, this is the exact course of conduct that Centene and its subsidiary company, Centene Management Company LLC (collectively, "Defendant" or "Centene") engaged in and the basis of this action.

Prior to being fired, Ms. Carlson served Centene as its Senior Human Resources Business Partner ("SHRP") for three years—half of which time Ms. Carlson spent working for Centene in a 100% remote capacity. Yet after eighteen (18) months demonstrating her ability to perform the

essential functions of her job at or in excess of Centene's expectations, she was fired because of her sincerely held religious beliefs.

Of course, Centene indisputably could have accommodated Ms. Carlson without enduring an undue hardship; indeed, Ms. Carlson was able to work remotely for a year and a half without issue and no undue hardship ever arose. Yet in August of 2021 and for reasons unknown, Centene refused to permit Ms. Carlson to work remotely without becoming vaccinated and provided her until December 31, 2021 to become "fully vaccinated" — even though, by definition, remote work makes it impossible for Ms. Carlson to contract or transmit COVID-19 to any colleague, co-worker, contractor, or third-party conducts business with Centene while she worked within the confines of her own home. Notwithstanding the arbitrary and futile nature of Centene's remote-worker mandatory vaccination policy, even had this policy made the slightest of sense, Ms. Carlson could not comply with Centene's newly implemented condition of employment because her sincerely held religious beliefs conflicted with Centene's newly promulgated mandatory COVID-19 vaccination policy.

To resolve this conflict, Ms. Carlson exercised her First Amendment right to Free Exercise and requested a reasonable accommodation based on her sincerely held religious beliefs in accordance with her Title VII right to a reasonable accommodation. Unfortunately, Ms. Carlson's request was denied, and despite submitting a subsequent appeal, Centene doubled down and again, refused to accommodate Ms. Carlson. On February 4, 2022, Centene terminated Ms. Carlson because of her sincerely held religious beliefs.

It is for this reason Ms. Carlson commences this action, which is properly before this Court, as more fully explained below:

## JURISDICTION AND VENUE

1.       This action arises under 42 U.S.C. § 2000e-2 and therefore, jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this claim is a civil action arising under the laws of the United States.

2.       This Court also has jurisdiction over this action pursuant to 42 U.S.C. § 1343(a)(4) because it is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.

3.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) & (c) and 42 U.S.C. § 2000e-5(f)(3), in that the events described herein occurred within the District and Centene maintains its headquarters and principal place of business within this District.

4.       This Court is authorized to grant Ms. Carlson's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## PARTIES

5.       Plaintiff Andrea Carlson ("Ms. Carlson") is an adult resident of Lane County, Oregon and a former Centene employee. At all times relevant, Ms. Carlson was employed as Centene's Senior Human Resources Business Partner, and while serving in this capacity, Centene discriminated against her and retaliated against her on the basis of her religion, ultimately culminating in her termination on or about February 4, 2022.

6.       Defendant Centene is a Missouri corporation that maintains its principal place of business in St. Louis, Missouri and Ms. Carlson's former employer.[1] At all times relevant, Centene employed more than fifty (50) employees and is therefore subject to Title VII and the Missouri Human Rights Act, both of which require employers (such as Centene) to reasonably accommodate their employees' (such as Ms. Carlson) sincerely held religious beliefs.

---

[1] For purposes of this action, Defendants Centene and Centene Management Company LLC shall be collectively referred to as "Centene" hereinafter.

3

7. Defendant Centene Management Company LLC ("CMC") is a Missouri corporation that maintains its principal place of business in St. Louis, Missouri, a subsidiary of Centene, and Plaintiff's former employer. At all times relevant, CMC employed more than fifty (50) employees and is therefore subject to Title VII and the Missouri Human Rights Act, both of which require employers (such as CMC) to reasonably accommodate their employees' (such as Ms. Carlson) sincerely held religious beliefs.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On February 4, 2022, Centene terminated Ms. Carlson.

9. Less than 300 days later, Ms. Carlson timely filed a Charge of Discrimination against Centene with the Equal Opportunity Employment Commission ("EEOC") on the basis of her religion.[2]

10. On May 5, 2023, the EEOC issued Ms. Carlson a Determination and Notice of Rights ("right-to-sue") Letter, which *inter alia* provided that Ms. Carlson has ninety (90) days to commence a civil action in federal court.

11. Because Ms. Carlson timely filed her Charge of Discrimination and because as of the date of this filing, less than 90 days have elapsed since the date on which the Ms. Carlson received her right-to-sue letter, all conditions precedent to maintaining this action have been satisfied.

## STATEMENT OF FACTS

12. On or about July 9, 2018, Centene hired Ms. Carlson and formed and employer-employee relationship with her.

13. At the time Centene hired Ms. Carlson, it did not require its employees to become vaccinated against COVID-19.

---

[2] Ms. Carlson does not assert disability-related claims in this action.

14. In August of 2021, Centene advised Ms. Carlson that it now required its employees to become vaccinated against COVID-19 as a condition of continued employment.

15. Under Centene's newly promulgated mandatory COVID-19 vaccination policy, Centene demanded its employees become "fully vaccinated" against COVID-19 on or before December 31, 2021. Any employee without a Centene-approved religious or medical accommodation to its mandatory COVID-19 vaccination policy who remained unvaccinated as of December 31, 2021 would be terminated.

16. On or about November 11, 2021, and pursuant to her rights under Title VII and the Missouri Human Rights Act, Ms. Carlson submitted to Centene a request for a reasonable accommodation due to her sincerely held religious beliefs.

17. As early as November 11, 2021, Centene knew about Ms. Carlson's sincerely held religious beliefs and was otherwise placed on notice of Ms. Carlson's sincerely held religious beliefs.

18. Prior to her termination, Ms. Carlson informed Centene and placed Centene on notice that she is a religious woman who sincerely beliefs that she is obligated to keep her body pure as a temple of the Holy Spirit. Ms. Carlson also sincerely believes that abortion is a sin and as a result, she cannot in good faith or conscience knowingly inject a substance (i.e., any of the available COVID-19 vaccines) into her body that she knows was derived and/or created through the use of aborted fetal cell line tissue.

19. Ms. Carlson's religious accommodation request further explained to Centene that the core of Ms. Carlson's Church's teachings is the principle that she must obey the judgment of her own informed and certain conscience and that she sincerely believes following her conscience is to follow Christ Himself. Thus, if a Christian like herself comes to an informed and sure

5

judgment in conscience that he or she should not receive a vaccine, then Ms. Carlson's Christian faith requires her follow this certain judgment of conscience and refuse the vaccine.

20. As such, Ms. Carlson's sincerely held religious beliefs conflicted with Centene's mandatory vaccination policy, and she therefore was prohibited from complying with Centene's policy requiring her to become vaccinated.

21. In lieu of vaccination, Ms. Carlson suggested various accommodations and advised Centene that she was amenable to *inter alia* continuing to work for Centene in a remote capacity.

22. Centene permitted Ms. Carlson to work remotely **for eighteen (18) months,** and for that year and a half, Ms. Carlson did so without issue. In fact, Ms. Carlson received the highest performance rating possible in her last performance review Centene generated concerning Ms. Carlson's work and performance before it terminated Ms. Carlson.

23. At all times relevant, including during the eighteen (18) week period in which Ms. Carlson worked remotely, Ms. Carlson did not come into physical contact with any other Centene employees or clients, and her duties did not include a member-facing role.

24. Ms. Carlson further advised that she had successfully performed her role as SHRP for more than three years at or in excess of Centene's reasonable expectations.

25. As SHRBP, Ms. Carlson's job duties included *inter alia* supporting two different health plans; however, one of the two plans she supported was based in Hawaii and therefore, she was required to work remotely irrespective as to whether she was in a Centene office or within the confines of her own home. Ms. Carlson's duties also included providing support for two policies based out of Centene's Tigard, Oregon and Vancouver, Washington offices, which again, Plaintiff required Plaintiff to support remotely.

26. Notably, Ms. Carlson notified Centene that hundreds of employees assigned to the same field office as her were permitted to continue working remotely, even after December 31,

2021 and throughout 2022, even though some of these employees had customer service and/or clinical roles requiring face-to-face engagement.

27. Because of this, and because of Centene's own record demonstrating its ability to have its employees work remotely, there is no dispute that Centene Corp was entirely able to accommodate Ms. Carlson without suffering an undue hardship.

28. Ms. Carlson specifically advised Centene that she was amenable to an array of reasonable accommodations, including continuing to work remotely, and further pointed out that none of the proposed accommodations would have imposed a financial burden on Centene, let alone a significant financial burden of the requisite magnitude to constitute an undue hardship.[3]

29. Centene nevertheless refused to accommodate Ms. Carlson even though it was fully aware of her sincerely held religious beliefs and the conflict that existed between her beliefs and Centene's mandatory vaccination policy.

30. On or about November 16, 2021, Centene responded to Ms. Carlson's accommodation request by sending her a denial notice via email on the basis that Ms. Carlson "did not provide sufficient information" to satisfy state and federal standards.

31. Contrary to Centene's assertion, Ms. Carlson undeniably provided sufficient information concerning her sincerely held religious beliefs. She provided information that placed

---

[3] In *Groff v. DeJoy, Postmaster General*, Slip Op. No 22-174, p. 3, n. 1 (June 29, 2023), the United States Supreme Court defined "undue hardship." In doing so, the Court considered the plain language of Title VII and the statutory intent of the term. Ultimately, the Court determined that "hardship," at a minimum, means "something hard to bear," and that under any definition is more severe than a "mere burden." *Id.* And by adding the qualifier "undue," the Court determined that Congress intended to raise the requisite burden to one of an "excessive" or "unjustifiable" level. *Id.* at p. 16 (citing Random House Dictionary, Webster's Dictionary, and American Heritage Dictionaries). Accordingly, the Court concluded that "undue burden" must refer to something more than a merely "de minimus" impact, i.e., "very small or trifling." *Id.* at p. 17 (citing Black's Law Dictionary). Thus, an "undue hardship" only exists whereas an employer can show that the burden of granting an accommodation would result in **substantial increased costs** in relation to the conduct of the particular business (at p. 18, citing Hardison at p. 83, n. 14).

7

Centene on the religious nature of her beliefs, and she provided the details and lifelong faith she has practiced evidencing the sincerity of her beliefs.

32. Indeed, absent a bona fide basis giving rise to a good faith doubt in the sincerity of her sincerely held religious beliefs, Centene is prohibited from inquiring as to the sincerity with which she holds her religious beliefs, yet Centene did so anyways.

33. Despite no obligation to provide Centene with information to which it is not entitled, Ms. Carlson indulged Centene and went above and beyond the legal requirements to request and become entitled to a reasonable accommodation, yet Centene still refused to accommodate her.

34. Accommodating Ms. Carlson did not impose any hardship upon Centene, let alone an "undue hardship".[4]

35. Centene had no basis to doubt the religious nature of Ms. Carlson's religious beliefs.

36. Centene had no basis to doubt the sincerity with which Mc. Carlson held and holds her sincere religious beliefs.

37. Centene terminated Ms. Carlson's employment because she is religious and because Ms. Carlson sought an accommodation based on her sincerely held religious beliefs.

38. Alternatively, Centene terminated Ms. Carlson's employment because she opposed Centene's religiously-motivated discrimination and its refusal to provide her with a reasonable accommodation for her sincerely held religious beliefs despite being lawfully entitled to the same.

39. Alternatively, Centene terminated Ms. Carlson's employment because she was entitled to and otherwise needed a reasonable accommodation for her sincerely held religious

---

[4] *See supra*, fn. 3, *Groff*, Slip Op. No 22-174, at 3, fn. 1 (defining "undue hardship").

beliefs based on the conflict between her beliefs and Centene's mandatory COVID-19 vaccination policy.

40. At all times relevant, Ms. Carlson satisfied or exceeded her employer's reasonable expectations concerning her job performance as evidenced by her performance reviews, including a performance review Centene issued that exclusively pertained to her work she was and remains able to do so either with or without a reasonable accommodation.

41. Specifically, Ms. Carlson demonstrated her ability to perform the essential functions and duties of her job at or in excess of Centene's reasonable expectations as evidenced by factors including without limitation, her education, tenure, experience, work history, reviews, and 18-month record of performing her job in a remote capacity without issue.

42. For the last year and a half prior to her termination, Ms. Carlson guaranteed she would pose absolutely zero risk of causing another Centene employee, colleague, co-worker, client, or other third-party engaged in business with Centene to contract or transmit COVID-19 because she worked in a remote capacity and therefore, could not contract or transmit the virus to other persons outside of her home.

43. In working from home, Centene made remote work an alternative COVID-19 mitigation protocol and in doing so, eliminated the threat transmitting COVID-19 posed to its employees substantially, if not entirely.

44. The aforesaid mitigation protocol has an evidenced-based track record demonstrating its effectiveness and as well as a track record of the feasibility with which Centene is able permit its employees to work remotely.

45. Based upon Centene's provision of remote work as a mitigation protocol and the continued provision of this mitigation protocol for more than eighteen (18) months during the

height of the pandemic, it is not subject to reasonable dispute that allowing Ms. Carlson to work remotely does not impose upon Centene an undue hardship.

46. Ms. Carlson has always been amenable, and Ms. Carlson remains amenable, to working from home, and Centene was aware of her amenability to the same at all times relevant.

47. The reasonable religious accommodation Ms. Carlson sought (i.e., working remotely) would not impose an undue hardship upon Centene.

48. The reasonable religious accommodation Ms. Carlson requested (i.e., working remotely) does not, nor did it ever, impose an undue hardship upon Centene.

49. Ms. Carlson's sincerely held religious beliefs are religious in nature and she explained her sincerely held religious beliefs in detail to Centene.

50. There is no dispute that the religious beliefs Ms. Carlson asserted are in fact, beliefs that are religious in nature.

51. Ms. Carlson's religious beliefs are sincerely held.

52. There is no dispute that Ms. Carlson's religious beliefs are in fact, sincerely held.

53. Denying Ms. Carlson's request for a religious accommodation and/or taking adverse employment action against Ms. Carlson by *inter alia* terminating Ms. Carlson's employment constitutes religious-based discrimination in violation of Title VII, *see* 42 U.S.C. § 2000e, *et seq.* and the Missouri Human Rights Act. *See* Mo. Code Regs. tit. 8 § 60-3.050.

54. Refusing to provide Ms. Carlson with a reasonable religious accommodation that does not impose an undue hardship despite the religious nature of Ms. Carlson's beliefs, the sincerity with which she holds her religious beliefs, and the conflict between her sincerely held religious beliefs and Centene's mandatory COVID-19 vaccination policy give rise to Ms. Carlson's lawful entitlement to a reasonable accommodation and the deprivation of such an

accommodation constitutes a violation of Title VII, *see* 42 U.S.C. § 2000e, *et seq.* and the Missouri Human Rights Act. *See* Mo. Code Regs. tit. 8 § 60-3.050.

55. As a religious person, Ms. Carlson is a member of a constitutionally protected class (religion), and the protected class on the basis of religion is entitled to equal protection of law as other protected classes of persons, including those who are disabled.

56. Refusing to reasonably accommodate Ms. Carlson's sincerely held religious beliefs while allowing other Centene employees and contractors to work without becoming vaccinated constitutes disparate treatment in violation of Title VII, *see* 42 U.S.C. § 2000e, *et seq.* and the Missouri Human Rights Act. *See* Mo. Code Regs. tit. 8 § 60-3.050.

57. Refusing to provide Ms. Carlson with an accommodation on the basis of her religion, while providing reasonable accommodations to other persons similarly situated on the basis of their religion constitutes disparate treatment in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

58. Refusing to provide Ms. Carlson with an accommodation on the basis of her religion, while allowing other similarly situated, non-religious persons to continue their employment or contract-related work constitutes disparate treatment in violation of Title VII. *See* 42 U.S.C. § 2000e, *et seq.*

59. Ms. Carlson's beliefs are religious.

60. Ms. Carlson's religious beliefs are sincerely held.

61. At all times relevant, Centene could reasonably accommodate and can reasonably accommodate Ms. Carlson's religious beliefs through *inter alia* weekly testing, social distancing, and remote working.

62. Accommodating Ms. Carlson through *inter alia* weekly testing, social distancing, and remote working. does not impose an undue hardship upon Centene.

63. Upon learning Ms. Carlson was a religious person, Centene terminated her employment.

64. After refusing to accommodate Ms. Carlson's sincerely held religious beliefs, Centene terminated her employment.

## COUNT I
### RELIGIOUS DISCRIMINATION
**Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.***

65. Ms. Carlson re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

66. Ms. Carlson sincerely holds religious beliefs and is a member of a protected class based on her religion.

67. Ms. Carlson is an employee within the meaning of Title VII.

68. Centene is an employer within the meaning of Title VII.

69. Title VII forbids an employer from terminating an employee because of her need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship. *Groff v. DeJoy, Postmaster General*, Slip Op. No 22-174, p. 3, n. 1 (June 29, 2023); *see also* 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

70. This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that she is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

71. Here, Ms. Carlson advised Centene of her sincerely held religious beliefs and that she sincerely believes abortion is a sin and as a result, she cannot in good faith or conscience

knowingly inject a substance (i.e., any of the available COVID-19 vaccines) into her body that she knows was derived and/or created through the use of aborted fetal cell line tissue.

72. Ms. Carlson also advised Centene of her sincerely held religious beliefs and that she sincerely believes her body is a temple and she must adhere to her faith, conscience, and the fundamental teachings of her Church which instruct her to *inter alia* refrain from injecting unknown substances into her body, especially whereas her conscience advises that the risks of doing so outweigh any potential benefit derived from doing so.

73. Ms. Carlson also advised Centene of her sincerely held religious beliefs and that she sincerely believes that her body is not to be altered in any way other than through means by which God created or through scientifically proven, safe, and effective manmade and necessary medical intervention.

74. Ms. Carlson also advised Centene of her sincerely held religious beliefs and that she sincerely believes that consuming or knowingly injecting anything into her body that God did not create would constitute a sin and could prevent her ability from one day, going to Heaven and sharing that Place with God.

75. Ms. Carlson informed Centene of this conflict and expressly sought an accommodation.

76. Centene had actual knowledge of Carlson's sincerely held religious beliefs based on the correspondences exchanged concerning her religious accommodation request and denial letter thereto, as well as e-mails concerning her request for an accommodation and Ms. Carlson's termination.

77. At all times relevant, Ms. Carlson was qualified, is qualified, and remains qualified to perform the essential functions of her job, unvaccinated. This is demonstrated by her eighteen

(18) month history working for Centene, unvaccinated and without issue, during the year and a half immediately preceding her termination.

78. At all times relevant, Ms. Carlson was qualified, is qualified, and remains qualified to perform the essential functions of her job with a reasonable accommodation. This is demonstrated by her eighteen (18) month history working for Centene in a remote capacity and her ability to do so without a single complaint, reprimand, or negative performance review during the year and a half immediately preceding her termination.

79. Because of her need for an accommodation due to her sincerely held religious beliefs, Centene took adverse employment action against Ms. Carlson by *inter alia* terminating her employment. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions includes "discharg[ing]," an employee or otherwise discriminating with respect to the "terms" and "conditions" of employment).

80. Because Ms. Carlson requested an accommodation for her sincerely held religious beliefs, Centene took adverse employment action against her and *inter alia* terminated her employment. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions includes "discharg[ing]," an employee or otherwise discriminating with respect to the "terms" and "conditions" of employment).

81. Centene made no efforts at all to accommodate Ms. Carlson's sincerely held religious beliefs despite knowing of the conflict that existed between her sincerely held religious beliefs and Centene's mandatory COVID-19 vaccination policy.

82. After refusing to make any efforts at all to accommodate Ms. Carlson's sincerely held religious beliefs, Centene terminated Ms. Carlson's employment because of the aforesaid conflict, because of her religion, because of her enjoyment of her Free Exercise right, because she

opposed the unlawful discriminatory practices complained of herein, and/or because of her sincerely held religious beliefs.

83. Centene's failure to produce any alternative therefore requires it to have accepted Ms. Carlson's proposed accommodations absent a showing that providing any such accommodation imposed upon Centene an undue hardship.

84. Accommodating Ms. Carlson would not have imposed an undue hardship on Centene, as evidenced by the utilization of the COVID-19 mitigation protocols as discussed above and the non-existent financial costs associated with the aforesaid COVID-19 mitigation protocols.

85. Accommodating Ms. Carlson would not have imposed an undue hardship on Centene, as evidenced by the fact that vaccination did not achieve the objective for which Centene's mandatory COVID-19 vaccination policy purportedly sought to achieve. There is no dispute that vaccination status does not prevent the contraction or transmission of COVID-19, therefore whether an employee was vaccinated or unvaccinated bears no weight on the interest sought to be achieved through the policy underlying this action.

86. Other corporations whose employees work in an entirely remote capacity have not insisted on mandatory vaccination without allowing accommodations for their employees who have sincerely held religious beliefs that conflicted with employment policies compelling the vaccination against COVID-19.

87. As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Ms. Carlson sustained pecuniary and non-economic injuries in an amount of five-hundred thousand dollars, ($500,000.00), including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## COUNT II
### RELIGIOUS DISCRIMINATION
**Violation of the Missouri Human Rights Act., Mo. Code Regs. tit. 8 § 60-3.050.**

88. Ms. Carlson re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

89. The Missouri Human Rights Act prohibits employers from discriminating on the basis of *inter alia* religion. Mo. Code Regs. tit. 8 § 60-3.050.

90. Centene had actual knowledge of Carlson's sincerely held religious beliefs based on the correspondences exchanged concerning her religious accommodation request and denial letter thereto, as well as e-mails concerning her request for an accommodation and Ms. Carlson's termination.

91. Ms. Carlson experienced adverse employment action and a materially adverse change in the terms and conditions of her employment – namely, the termination of her employment – because of her sincerely held religious beliefs, her religion, and her opposition to unlawful employment practices such as the denial of accommodations requested by employees lawfully entitled to such accommodations.

92. At all times relevant, Ms. Carlson was qualified, is qualified, and remains qualified to perform the essential functions of her job, unvaccinated.

93. At all times relevant, Ms. Carlson was qualified, is qualified, and remains qualified to perform the essential functions of her job with a reasonable accommodation.

94. Because of Ms. Carlson's sincerely held religious beliefs, Centene took adverse employment action against her by *inter alia* refusing to accommodate her and terminating her employment.

95. Providing a reasonable religious accommodation to Ms. Carlson would not cause Centene to suffer an undue hardship as evidenced by Centene's ability to allow Ms. Carlson to work remotely and her eighteen (18) month history of doing so without issue.

96. All allegations set forth herein constitute a discrimination on the basis of religion.

97. All allegations set forth herein constitute a failure to accommodate on the basis of religion.

98. All allegations set forth herein constitute a violation of the MHRA's prohibition of religious discrimination and its prohibition of refusing to accommodate employees with sincerely held religious beliefs when no undue hardship exists.

99. As a direct and proximate result of the aforesaid complained of conduct and violation of the MHRA, Ms. Carlson sustained pecuniary and non-economic injuries in an amount of five-hundred thousand dollars ($500,000.00), including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Carlson respectfully prays that this Honorable Court enter judgment in her favor, award such relief as to make Ms. Carlson whole and remedy the aforesaid violations of Missouri and federal law, and hold Centene liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

(a) Issue a declaratory judgment that the practices complained of in this Complaint are unlawful and violate Title VII of the Civil Rights Act and the Missouri Human Rights Act;

(b) Enjoin Centene from pursuing its policy of making no religious accommodations to its oath requirement for its employees;

(c) Require Centene to adopt hiring and employment policies that comply with Title VII and the Missouri Human Rights Act, including the lawful requirement that employers reasonably accommodate their employees' sincerely held religious beliefs;

(d) Award Ms. Carlson all appropriate and legally available monetary relief, including lost compensation and benefits, in an amount to be determined at trial but in an amount no less than five hundred thousand dollars ($500,000.00), to make her whole for the losses she suffered as a result of the unlawful conduct alleged in this Complaint;

(e) Award Ms. Carlson any interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest;

(f) Award compensatory damages to Ms. Carlson to fully compensate her for the pain, suffering, and other expenses caused by the harmful conduct alleged in this Complaint;

(g) Award Ms. Carlson a reasonable amount of attorney's fees for the work of her attorneys in pursuit of this action and the protection of her rights;

(h) Award Ms. Carlson all costs, disbursements, and expenses she paid or that were incurred on her behalf;

(i) Award any such additional relief the Court deems just and proper; and

(j) Award any other relief as allowed by law.

## DEMAND FOR JURY TRIAL

Ms. Carlson demands a trial by jury of all issues and each and every cause of action so triable.

Dated: July 25, 2023

                                            Respectfully submitted,
                                            ANDREA CARLSON

                                       By: /s/ MICHAEL A. YODER

        Michael A. Yoder [1600519DC]
        LAW OFFICE OF MICHAEL A. YODER, PLLC
        2300 Wilson Blvd., Suite 700
        Arlington, VA 2201
        Tel: (202) 595-4504
        michael@yoderesq.com

*Counsel for Plaintiff*